**UNITED STATES FIDELITY & GUARANTY CO. et al. v. BURTON LUMBER CO. et al.  (No. 1647.)**

(Court of Civil Appeals of Texas. Amarillo. April 14, 1920. Rehearing Denied May 5, 1920.)

**1. Appeal and error ⬅️907(3)—Performance of condition to valid contract presumed to support findings in absence of statement of facts.**

Where there was no exception to petition and pleas of intervention against the sureties on a school building contractor's bond for failure to allege that the certificate required by Vernon's Sayles' Ann. Civ. St. 1914, arts. 2904n, 2904o, was procured, and no allegation that no such certificate was not procured, it will be presumed, on appeal without statement of facts, in support of the court's finding, that the contract was lawfully made that such certificate was procured.

**2. Schools and school districts ⬅️81(2)—Contractor's bond valid as to materialmen, though not as to city.**

Though the failure to procure the certificate required by statute as a condition precedent to a valid contract for the construction of a school building makes the contract void as between the city and the contractor and his sureties, it does not affect the liability of the contractor's sureties to those who furnished material which was used in the construction of a building accepted by the city.

**3. Schools and school districts ⬅️71—General statute, requiring certificate for building, held not to defeat special authority.**

Vernon's Sayles' Ann. Civ. St. 1914, arts. 2904n, 2904o, requiring a certificate as a condition precedent to erection of a school building, which are general statutes, do not take away the authority given the city of Dallas by its charter granted by Sp. Acts Thirtieth Leg. (1907) c. 71, art. 5, § 1, to construct necessary school buildings.

**4. Schools and school districts ⬅️81(2)—Bond of contractor inures to benefit of materialmen.**

The bond given by a contractor for a school building, as required by Vernon's Sayles' Ann. Civ. St. 1914, arts. 6394f–6394j, secures the materialmen and laborers as well as the city and may be sued upon by them.

**5. Principal and surety ⬅️102—Dissolution of contractors' partnership does not release liability of sureties on bond to materialmen.**

Where a copartnership contracted for the erection of a school building and gave the required bond, but dissolved before the work was performed, though the one partner continued performance of the contract under the firm's name, the sureties were not thereby released from liability to those who furnished materials to the partner after the dissolution.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by Leon Jameston against the United States Fidelity & Guaranty Company and others, in which the Burton Lumber Company and others intervene. Judgment for interveners, and defendants appeal. Affirmed.

Hunt & Teagle, of Houston, and Seay, Seay & Malone and William Lipscomb, all of Dallas, for appellants.

Spence, Haven & Smithdeal, Claude M. McCallum, and H. E. Spafford, all of Dallas, for appellees.

HUFF, C. J. Jones & Harrington entered into a contract with the city of Dallas, October 26, 1915, to construct the Winnet-

ka school building, in that city. The contractors were to furnish all labor, tools, and material used in the building, with certain exceptions, such as plumbing, electric wiring, etc. The contract also provided that the contractors, at the time of executing the contract should execute and deliver to the city a bond in the sum of $21,000, having thereon two or more good and sufficient sureties, one of whom should be an approved surety company, doing business in the state of Texas, and the other party should reside in the city of Dallas; that the bond should be conditioned for the faithful performance of the contract, and should provide that no change in the plans, etc., the manner of paying compensation, etc., should to any extent affect the obligation of the sureties thereon; "and said bond shall be further conditioned that said contractors shall make prompt payment for all labor done and material furnished in the carrying out of this contract." On that date the contractors executed their bond called for in the contract, in the sum of $21,000, with the United States Fidelity & Guaranty Company, and G. M. Seay, as sureties, reciting that the contractors had contracted to construct for the city of Dallas the building in strict accordance with all the terms and specifications therein referred to, all of which the bond referred to and made part thereof, to the same extent as though they were expressly written and embodied therein. And if the contractors should faithfully perform all the terms, provisions, and stipulations of the contract and the terms of this bond, "and shall make prompt payment for all materials furnished and labor performed in the prosecution of the said contract," then the obligation should become null and void; otherwise to remain in full force and effect. Leon Jameston brought suit for certain material furnished Jones & Harrington, the contractors, used by them in the construction of the building named in the contract and bond against the contractors, and the appellants as sureties on the bond, together with the city of Dallas, alleging the execution of the contract above set out and also the bond; that the contract provided the contractors should faithfully perform the contract, and should furnish a bond to cover and guarantee that all bills for labor done and material furnished in carrying out the contract should be paid by the contractors, and that the bond provided, as required in the contract, to make prompt payment for all material furnished and labor done in the prosecution of the contract; that the plaintiff furnished material to the contractors, under the contract above mentioned, to the amount of $1,280, setting up some credits, and alleging the balance due and unpaid; that the contractors, on or about September 15, 1916, abandoned their contract, and the city took charge and completed the building, and that

the city then had remaining in its hands $2,500, which should be applied towards paying the creditors of the contractors, furnishing labor and material; that such sum was not sufficient to pay such claims against the building. Therefore he asked that all persons similarly situated be given an opportunity to intervene, etc. The Burton Lumber Corporation and quite a number of others intervened, setting up their claims, praying for judgment for their respective amounts, setting up the contract and bond, and attaching them to the pleadings. They allege that Jones & Harrington were a copartnership, and on "October 26, 1915, executed with the city of Dallas, lawfully acting by its board of education, their building contract whereby," etc. The case was tried by the court without a jury, and is here alone upon the findings of fact by the trial court, and without a statement of facts. It was ordered by the trial court that the city of Dallas should pay into the registry of the court $2,393.10, and when paid that the city go hence without day and recover its costs. Judgment was rendered in favor of the Burton Lumber Corporation, and eight other interveners, on their claims against the contractors for material for the construction of the building under the contract and bond, and against the sureties on the bond. The aggregate sum found was something over $14,000, less their pro rata share of the sum adjudged to be paid by the city. Several interveners were not given judgment against the sureties. The contractors defaulted, and judgment was rendered against the partnership and against Jones, the served member thereof. This appeal is by the sureties on the bond. The sureties in their answer pleaded general and special exceptions, general denial, and specially answered in effect that Jones & Harrington were a copartnership; that the bond was executed by the sureties, and that they relied upon the joint technical and financial liability of both such partners to successfully complete the contract and pay for the work and material; that after January 25, 1916, Jones had no further connection with the firm, and did not participate further in the construction of the building; that the material furnished by the plaintiff and the interveners was furnished after such date to Harrington, and not to Jones & Harrington, and that the sureties are not therefore liable on the claims.

The first assignment and the proposition thereunder assert, in effect, that the contract with the city was void, in that under articles 2904n and 2904o, Vernon's Sayles' Civil Statutes, a school building, costing over $400, is absolutely void, unless there was a school building permit from the officers legally authorized to grant the same, certifying that the plans and specifications of the proposed building conformed to the hygienic, san-

itary, and protective regulations established by the act for public school buildings in Texas, and that, in order to state a good cause of action against a general demurrer, it must affirmatively be alleged in the petition that a compliance with the requirements of the section had been had; that, the contract being void, articles 6394f to 6394j, inclusive, will not authorize materialmen and laborers to sue on the bond; and, as the bond was not made to such persons, but to the city, the appellees could not recover on the bond as a common-law obligation. There was therefore error in overruling and in not sustaining the general exception to the petition and pleas of intervention.

[1] There was no exception to the pleadings by appellant that plaintiffs and interveners failed to allege such condition precedent to the right of contract by the city by obtaining the necessary building certificate. Neither was there any pleading by appellants to that effect. In so far as this record shows, the question is presented for the first time in this court by the assignment. There appears to have been filed no motion for new trial in the court below. There is no statement of facts in this court, and only the findings of the trial court. The court in its findings on this point states that on October 26, 1915, Jones & Harrington entered into the contract with the city of Dallas as set out and described in plaintiffs' petition and in the intervention of Burton Lumber Corporation, and by other interveners, naming them. It was alleged therein:

"The said firm and copartnership, styled Jones & Harrington, heretofore, to wit, October 26, 1915, executed with the city of Dallas, lawfully acting by its board of education, their binding contract, whereby," etc.

If, as contended by appellants, the certificate mentioned in the articles of the statute was required before a building contract could be executed by the board of education, if the board made the contract without such certificate the board would not be "lawfully acting" in entering into the contract with the city. The allegation may have been a mere conclusion, or too general, but it would take a special exception to reach the defect. At most, the certificate was a condition precedent to confer the power on the board to bind the city in a contract for the building. If that certificate had not been obtained when the contract was executed, the board was acting in an unlawful manner. When it is alleged in making the contract the board was acting in a lawful manner it is in effect alleged that all necessary precedent requirements to confer the power to contract had been met and performed. In the absence of a statement of facts we may assume the necessary facts showing a lawful contract was made, and we believe such an allegation would admit the proof and sustain a judgment thereon.

[2] The question here is not the validity of the contract as creating an obligation against the city. The officers of a city cannot create an indebtedness against the municipality unless they comply with the law. Where it becomes necessary to establish an indebtedness against such corporation, the rule requires that all necessary preceding requirements be shown by the pleadings and the evidence. In this case, as between the city, contractors, and the bondsmen, the contract may have been illegal and nonenforceable by or against the city. Such would appear to be the effect of the authorities cited by appellant. McNeal v. City of Waco, 89 Tex. 83, 33 S. W. 322; Edwards County v. Jennings, 89 Tex. 618, 35 S. W. 1053; Crowell District v. Bank, 163 S. W. 339; Garrett v. McAdams, 163 S. W. 320. Such is substantially the holding of this court in Kerbow v. Wooldridge, 184 S. W. 746. In that case the materialmen sought a recovery against the school district and the trustees as a corporate body. It was held therein that the petition, in order to show liability against the district, should have alleged the necessary certificate authorizing the building. It is held also in that case, even though the contract with the school district should be shown to be legal by the pleadings and evidence, to enforce a liability against the district, nevertheless materialmen who sold the contractor material, or laborers who performed work under the contract with the contractors, that their right to recover would not be affected by such failure. The bond is a dual obligation. The contractors agreeing to furnish material and labor and the contract and bond both required the contractors to make prompt payment for all material furnished and labor performed, we think thereby obligating the sureties to such materialmen and labor on the building. It follows that the contract may be invalid between the city and the contractors, and yet have no effect upon the contract between the materialmen and the contractors. See authorities cited in Kerbow v. Wooldridge, supra, Kansas City v. Schroeder, 196 Mo. 281, 93 S. W. 405, and Equitable Surety Co. v. U. S., to the Use, etc., 234 U. S. 448, 34 Sup. Ct. 803, 58 L. Ed. 1394. In this case, as in the Missouri case, the contract was completed and the building turned over to the city and accepted by it. The appellants under such circumstances are in no position to assert the contract is void, and thus escape the obligation to pay for the material used by the contractors in the construction of the building. Under the facts set out in the pleadings as between the contractors and sureties on one side and the materialmen on the other, we doubt the necessity of an allegation by the materialmen showing all necessary preceding requirements to empower the

board of education to make a valid contract. This would seem to us to be a duty on the appellants as a matter of defense to defeat their contract with the materialmen.

[3] We also suggest that articles 2904n and 2904o are general statutes. The city of Dallas is operating under a city charter, granted by a special act of the Thirtieth Legislature (Acts 1907, c. 71) article 5, § 1, of that charter, provide:

"The city public schools shall be under the management and control of the board of education. * * * The members of said board * * * shall have exclusive control of the public schools of the city of Dallas, and shall have full and ample authority in accordance with the provisions hereof, to provide necessary school buildings and facilities. * * * Among the powers hereby conferred on said board of education, the following are for greater certainty enumerated: To contract for, lease and purchase lots, and to construct buildings for school purposes, and to make all needed repairs and alterations in same."

It would seem that by a special law the powers to contract school buildings is placed in the city under its board of education. The articles above referred to, as would appear, do not take away the authority given the city by special charter to construct buildings for school purposes. City of San Antonio v. Berry, 92 Tex. 319, 48 S. W. 496.

[4] We are of the opinion articles of Vernon's Sayles' Statutes 6394f to 6394j are applicable, and give materialmen and laborers a right of action on the bond. It is provided by the statutes that any firm entering into a formal contract with the municipality for the construction of public buildings shall be required to execute the usual penal bond with good and sufficient sureties, with the additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor and materials in prosecution of work provided for in the contract; that this bond may be sued upon by such materialmen or laborers. It is contended by the appellant that there was no legal contract shown, and therefore the above articles do not apply. The appellees emphasize that the statute used the term "formal contract," and the contract in question meets that requirement with reference thereto. We shall not attempt to determine the meaning of the term as used in the statute—whether it means strictly in conformity with law or just a mere form. We think the statute intended that the bond should subserve a dual purpose; that is secure the city as well as the materialmen and the laborers, and it takes the place of the lien which they might have secured but for the public nature of the building. The bond evidently was intended to subserve that purpose. The contract required the contractor to furnish the material

and labor and to execute a bond, conditioned as the bond in this case was conditioned, which provides that it is given to secure the prompt payment for all material and labor done in the prosecution of the contract. The bond and the contract make it evident the class intended to be secured or protected as much so as if it had named them specifically. The bond was an obligation with such class under the terms of the statute. In the case of the Equitable, etc., v. United States, to the Use of, etc., supra, the Supreme Court, speaking of the act then under review, and after reviewing quite a number of cases, stated of the act in question:

"Its title is 'An act relative to the payment of claims for material and labor furnished for District of Columbia buildings.' The enacting clause, as well as the title, shows that Congress recognized that no legislation was necessary in order to enable the commissioners of the district to require 'the usual penal bond, with good and sufficient sureties,' from a contractor engaged for the construction of a public building. The object of the legislation was to give legal sanction to the 'additional obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract,' and to give such a laborer or materialman the right to bring action if necessary upon the bond, either in the name of the District of Columbia or of the United States, for his own benefit, against the contractor and sureties. The nominal obligee is, with respect to these third parties, a mere trustee, and the obligors, including the surety as well as the principal contractor, enter into the obligation in full view of this."

Again speaking with reference to the claim that the sureties are released by reason of alterations made without their consent, the Supreme Court said:

"In the case of bond given under a statute such as the act of February 28, 1899, there is no single obligee or creditor. The surety is charged with notice that he is entering into what is, in a very proper sense, a public obligation, and one that will be relied upon by persons who can in no manner control the conduct of the nominal obligee, and with respect to whom the latter is a mere trustee, and therefore incapable, upon general principles of equity, of bartering away, for its own benefit or convenience, the rights of the beneficiaries. In the light of the statute, the surety becomes bound for the performance of the work by the principal in accordance with the stipulations of the contract, and for the prompt payment of the sums due to all persons supplying labor and material in the prosecution of the work provided for in the contract."

We believe the bond inured to the benefit of the appellees. The bond upon its face appears to have been made to secure the prompt payment of the material furnished for the building. We believe the law as it existed at the time of the making of the bond should

be read into the bond, if necessary to give the protection to the class named. R. C. L. Contracts, par. 243, vol. 6, p. 855; American Indemnity Co. v. Burroughs Hdwe. Co., 191 S. W. 574. The contract and bond in this case do not disclose an intention to depart from the statute, but evidence a purpose to make the obligation in conformity therewith. The city was not materially interested in requiring the payment of material or labor, so long as it was furnished, as no lien could have been enforced against the building. It occurs to us there could be no other purpose in providing for such claims and requiring prompt payment than to secure the class furnishing such material and labor. Hill v. American Surety Co., 200 U. S. 197, 26 Sup. Ct. 168, 50 L. Ed. 437.

[5] The second assignment asserts the sureties were relieved by reason of the fact that after executing the contract and bond the partnership of Jones & Harrington was dissolved, Jones retiring from the partnership, and Harrington prosecuted the work until the firm became insolvent, when the city took charge of the building and completed it under the contract. The firm appears to have been dissolved January 24, 1916, after the contract and bond had been executed. The trial court found that the interveners, appellees here, established their claims, and that the material was sold and delivered, and used in the school building; that the claims mentioned and sued upon were sold upon open account after January 24, 1916. The appellants, however, filed an admission in the trial court that the Burton Lumber Corporation entered into an agreement with the partnership to furnish the material for the building before the dissolution and the lumber furnished by it and used in the building was furnished on that contract. The trial court also found after the dissolution Harrington continued to operate under the firm name until September 1, 1916, when he became insolvent and abandoned the work. The city never recognized the dissolution, and continued to act as though no dissolution had in fact occurred; that on September 7, 1916, the city of Dallas took over the construction of the building and finished building it, completing the work December 24, 1916.

We believe the exceptions stated in 32 Cyc. p. 83, will control in this case:

"If the surety has become liable for the performance of a particular contract by a partnership, its subsequent dissolution before the completion of the contract will not release him from liability for each of the former partners so far as that particular contract is concerned."

The contract in this case, with the bond, was made to secure the materialmen in furnishing material upon the particular building contracted to be erected by the partnership. The object of the statutes was to protect this class of creditors, and it seems to us that it can make no difference as to such creditors whether one or both contractors completed the work, or received the material, the partnership is nevertheless liable, as found in this case by the judgment of the court. The sureties were charged with notice that they were entering into an obligation which would be relied upon by others who could not control the action of the principals or of their trustee. The mere delivery of the material after the dissolution would not affect the obligation to indemnify for failure to make prompt payment. The action of the parties in this case would amount to no more than a subletting by the partnership to one of the members thereof. School District v. Hallock, 86 Or. 687, 169 Pac. 130; Abbott v. Morrissette, 46 Minn. 10, 48 N. W. 416; Freeman v. Berkey, 45 Minn. 438, 48 N. W. 194; Kaufmann v. Cooper, 46 Neb. 644, 65 N. W. 796; Adams v. Haigler, 123 Ga. 659, 51 S. E. 638; Illinois Surety Co. v. Davis, 244 U. S. 376, 37 Sup. Ct. 614, 61 L. Ed. 1206.

We believe the judgment should be affirmed.