## UNITED STATES FIDELITY & GUARANTY CO. v. UNITED STATES,
### to Use of SMOOT.

(Court of Appeals of District of Columbia.  Submitted March 7, 1924.  Decided May 5, 1924.)

#### No. 4043.

1. United States ⬅➡67(3)—Suit on government contractor's bond must be commenced within one year after final "settlement."

Suit by materialmen in the name of the United States on government contractor's bond must be commenced within one year after performance and final settlement, and final "settlement" signifies an administrative determination by proper authority of amount due, regardless of consent or agreement of other party to the contract or account.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Settle—Settlement.]

2. United States ⬅➡73—Reservation in agreement with contractor of right to change plans permits only changes not amounting to departure.

In suit by materialmen on government contractor's bond, held, that reservation by government in its agreement with contractor of right to change contract, plans, and specifications permits only of changes which are not so extensive and material as to amount to a departure from the contract, rather than permissive modification of its details.

3. United States ⬅➡74½, New, vol. 12A Key-No. Series—Surety of government contractor not liable to materialmen furnishing supplies for additional work.

Though agreement with government contractor reserved to government the right to change the plans and specifications of building of a road and bridge, surety is not liable to materialmen furnishing supplies for additional roads, increasing total cost allowed by government from agreed price of $48,115 to $78,258.

Appeal from the Supreme Court of the District of Columbia.

Action by the United States, to the use of Lewis E. Smoot, against the United States Fidelity & Guaranty Company.  Judgment for use plaintiff, and defendant appeals.  Reversed and remanded.

Edwin C. Brandenburg and Louis M. Denit, both of Washington, D. C., for appellant.

William G. Johnson, of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, VAN ORSDEL, Associate Justice, and MARTIN, Presiding Judge of the United States Court of Customs Appeals.

MARTIN, Acting Associate Justice.  The United States, to the use of Lewis E. Smoot, sued the Faribault Building Corporation and the United States Fidelity & Guaranty Company as its surety upon an account for sand and gravel furnished for the prosecution of work upon a certain public contract for the building of a road and bridge.  The Building Corporation was not served with process; the case therefore proceeded against the Guaranty Company alone.

At the trial the defendant company admitted its suretyship upon the contract, but claimed in defense, first, that the suit was barred by the statute of limitations; second, that in fact the sand and gravel in

question had been furnished wholly or in part for a certain landing beach contract, which was a different contract from that upon which the defendant was liable; and, third, that, if any of the sand and gravel had been furnished in connection with the road contract, it was for certain extensions thereof, for which the defendant was not liable. There was a verdict and judgment against the Guaranty Company for the full amount claimed.

It appears that on October 3, 1918, the Faribault Building Corporation entered into a contract with the United States to furnish all the labor and material necessary for the construction of a concrete road, together with a bridge over Elizabeth creek, at the Naval Air Station, Anacostia, D. C., in accordance with certain plans and specifications, the cost to be $48,115, together with certain stipulated prices for excess concrete pavement in place, if required. The government expressly reserved the right to make such changes in the contract, plans, and specifications as it might deem necessary or advisable, and the contract prescribed a method for determining the increased cost of such changes, if any were made. The Guaranty Company became surety upon a bond conditioned that the contractor should well and truly perform the contract—

"as it now exists or may be modified according to its terms, and shall promptly make payment to all persons supplying it with labor and materials in the prosecution of the work provided for in the aforesaid contract."

Work was begun upon the contract early in October, 1918, and continued without change in the plans or specifications until November 21 following, when the government directed the contractor to alter the plans as follows, to wit: To increase the width of the road from the storehouse to the rear of the hangar from 18′ to 22′; to build an additional stretch of road from the rear of the hangar to the garage and proposed storehouse, and to the proposed paint and dope shop and power house; also to construct an additional road from the concrete platform at the rear of the proposed hangar to the new aeronautical engine laboratory, as shown in red on the blueprint; also to make the proper fill involved in the relocation of a certain part of the road from that originally shown, and a concrete reinforcement of the outfall sewer where the road would cross the same; also to bring a certain part of the road to the proper grade with the necessary fill, and finish part of the roadway with gravel surface, instead of concrete pavement as for the balance of that road. The cost of this additional work was estimated at $16,000. Afterwards, in the month of January, 1919, while the work as thus altered was in progress, the government directed that the contractor should increase the width of the macadam shoulders on the concrete road from 3 feet to 5 feet, and also to place an additional fill for a new grade established for part of the road; the cost of the first alteration being estimated at $1,500, and the latter at $6,000.

The contractor finished the work as thus altered before March 1, 1919. Several months after the entire work was completed, to wit, on May 23, 1919, a written contract, entitled a "Supplemental Agreement," providing for the alterations, was signed by the contractor and

by the government, and a new bond with other sureties was delivered by the contractor to the government, conditioned as required by the statute for the faithful performance of the supplemental agreement. This contract contained a stipulation, signed by the Guaranty Company, that it should remain liable upon its bond for the original work, but should not become liable for that provided for by the latter agreement. The plaintiff, Smoot, was not notified of any of these proceedings.

The alterations in the contract as aforesaid included changes in the width, grade, fills, locations, and other features of the original road, and also provided for the building of certain new or additional stretches of roadway, in order to connect the first road to certain government buildings not mentioned in the original contract. These extensions required increased deliveries of sand and gravel, all of which were furnished by the plaintiff. The plaintiff did not keep a separate account of the materials delivered for the construction of the original roadway, as distinguished from the alterations and additions thereto; but it appears in the testimony that about three-fifths of the sand and gravel now in question were used upon the original roadway, and about two-fifths upon the alterations and additions thereto. The testimony does not disclose what proportion of the latter quantity was due to the extensions alone. The total cost of the work was increased altogether from the agreed price of $48,115 to $78,258; the latter sum, representing the cost finally allowed by the government.

[1] As already stated, the first claim of the Guaranty Company was that the plaintiff's suit was barred by the statute of limitations. We think that this claim was untenable. It is true that such a suit must be commenced within one year after the performance and final settlement of the contract; also that the word "settlement," in this usage, signifies an administrative determination by the proper authority of the amount due, regardless of the consent or agreement of the other party to the contract or account. Illinois Surety Co. v. United States, 240 U. S. 214, 36 Sup. Ct. 321, 60 L. Ed. 609. But the record discloses that the administrative determination in this case took place on December 6, 1919, when the Bureau of Yards and Docks approved of the delivery of a final voucher for payment in full under the contract, "without the assessment of damages for delay." Up to that time such damages were actually due to the government from the contractor, and this was the first authoritative remission of the same; accordingly it established the date when the indebtedness of the government to the contractor was actually liquidated. The present suit was commenced within one year after that time.

Another claim made by the Guaranty Company was that the sand and gravel now sued for were furnished wholly or in part for a different contract, one upon which the defendant was not liable as surety, and that plaintiff had wholly failed to show what part thereof, if any, had in fact been furnished for the road contract upon which defendant was liable. We think, however, that the record does not disclose such a failure of proof upon this point as to require a reversal of the judgment.

[2] The next claim of the Guaranty Company was that, if the sand and gravel in question were in fact wholly or partly furnished in connection with the road contract, the deliveries were for certain extensions and additions to the road, outside of the contract and of its permissive alterations, and that the defendant company was not liable therefor. The verdict and judgment, however, were for the full amount claimed by the plaintiff.

We are of the opinion that the surety company was not liable for the sand and gravel furnished for the new and additional stretches of road built as above stated, notwithstanding the reservation by the government of a right to change the contract, plans, and specifications, as a term of the original agreement; for such a provision permits only of changes which are not "so extensive and material as to amount to a departure from the original contract rather than a permissible modification of its details." Equitable Surety Co. v. McMillan, 234 U. S. 448, 457, 34 Sup. Ct. 803, 806 (58 L. Ed. 1394); United States v. Freel (C. C.) 92 Fed. 299; Id., 99 Fed. 237, 39 C. C. A. 491; Id., 186 U. S. 309, 22 Sup. Ct. 875, 46 L. Ed. 1177.

[3] It is probably true that some of the changes above described were "permissive modifications" of details only, such as those relating to the width and grade of the road; but the extensions or new stretches of road aforesaid were not constructed for the purpose of altering or improving the details of the road as originally described, so as to carry out more perfectly the expressed intent of the contract, but were in fact new roads, connecting the road first contracted for with other points not contemplated by the original contract. These additional roads, therefore, were not changes in the "details" of the agreement, but were new undertakings, outside of the original engagement of the contracting parties. It follows accordingly that the defendant company was not liable for materials furnished for them.

It should be noted that the defendant is not claiming to be released from all obligation upon the bond, but only that it shall not be held liable for the subsequent additions to the work. As above stated, a term to that effect was incorporated in the so-called "supplemental agreement" of May 23, 1919, and this was offered in evidence by the Guaranty Company at the trial; but the court excluded it. This ruling was not erroneous, for the extent of the company's liability was fixed by the first contract, and could not be affected by the subsequent "supplemental agreement." Since, however, it was not liable for materials furnished for the additional roads, and since the evidence failed to disclose what part of the account related to the original construction, including the permissive changes thereof, and what part to the extensions, the judgment must be reversed.

There are other assignments presented by the appellant, but we find no merit in them.

The judgment below is reversed, with costs, and the case is remanded for further proceedings consistent herewith.

This case was decided prior to the death of the late Chief Justice.