Cecil W. ARMSTRONG et al.

v.

UNITED STATES.

No. 532–56.

United States Court of Claims.
Jan. 14, 1959.

Burton R. Thorman, Washington, D. C., for plaintiffs. Solomon Dimond, Washington, D. C., was on the brief.

Kathryn H. Baldwin, Washington, D. C., with whom was Asst. Atty. Gen., George Cochran Doub, for defendant.

JONES, Chief Judge.

Petitioners were subcontractors under a contract executed with the Department of the Navy for the construction of military vessels. They bring this action to recover just compensation under the Fifth Amendment to the Constitution for property rights allegedly taken by defendant. Those rights consisted of statutory liens which plaintiffs claim were acquired under Maine law by reason of having provided materials and services in the construction of the vessels.

There appears to be substantial agreement between the parties as to the circumstances giving rise to plaintiffs' claim, and both parties have therefore moved for summary judgment.

In March 1954, defendant, acting through the Department of the Navy, entered into a contract for the construction of 11 personnel boats with the Rice Shipbuilding Corporation of East Boothbay, Maine.[1] For this work defendant agreed to pay $175,900.

After performance of the contract had begun, defendant commenced to make progress payments to the contractor based upon the estimated percentages of the work completed, less 3 percent retained percentages. At the request of the Rice Shipbuilding Corporation, plaintiffs furnished it with supplies, materials, and equipment in connection with its performance of the Navy contract. It is alleged in the petition that amounts are due the plaintiffs as consideration for furnishing such materials and supplies, and for work, labor, and services performed in connection therewith.

In August 1955, the Rice Shipbuilding Corporation was notified by letter that defendant had terminated the contract for default because of Rice's failure to deliver the boats within the specified time and to make satisfactory progress in performance of the contract. The contractor was also informed that defendant would exercise its rights under clause 11(c) of the contract and have the undelivered vessels completed by another shipbuilder, with the contractor held liable for any excess costs of completion. The final paragraph of the letter directed the contractor, pursuant to clause 11(d) of the general provisions of the contract, to transfer title to the Government of the partially completed vessels and certain "manufacturing materials,"[2] and to deliver those vessels and materials in the manner and at the time specified by a designated representative of the Navy.

1. Personnel boats of the type under contract were to be used aboard and in connection with the operation of combat vessels such as aircraft carriers, battleships, and cruisers.

2. Clause 11(d) of the contract's general provisions provided:

"11. Default.

\* \* \* \* \*

"(d) If this contract is terminated as provided in paragraph (a) of this clause, the Government, in addition to any other rights provided in this clause, may require the Contractor to transfer title and deliver to the Government, in the manner and to the extent directed by the Contracting Officer, (i) any completed supplies, and (ii) such partially completed supplies and materials, parts, tools, dies, jigs, fixtures, plans, drawings, information, and contract rights (hereinafter called 'manufacturing materials') as the Contractor has specifically produced or specifically acquired for the performance of such part of this contract as has been terminated; and the Contractor shall, upon direction of the Contracting Officer, protect and preserve property in possession of the Contractor in which the Government has an interest. The Government shall pay to the Contractor the contract price for completed supplies delivered to and accepted by the Government, and the amount agreed upon by the Contractor and the Contracting Officer for manufacturing materials delivered to and accepted by the Govern-

As a consequence, the contractor executed a document entitled "Instrument of Transfer of Title" by which it transferred to defendant all of the transferor's right, title, and interest in the "manufacturing materials" as specified by defendant. The Government thereafter removed these materials from Maine and delivered them to naval shipyards at New York, Philadelphia, and Norfolk where the boats were completed, the materials transferred being used in their construction.[3]

Prior to termination of the contract, defendant paid the Rice Shipbuilding Corporation $141,387.20 in the form of progress payments. The cost of completing the boats amounted to $166,627.34, exclusive of the materials transferred to defendant and subsequently used in the construction work. This added cost to the Government resulted in the assessment of "excess costs" against the contractor, determined by the contracting officer to be $146,470.28. Demand was made upon the contractor for payment of these excess costs. No part of this amount has been paid. The contractor, now adjudicated a bankrupt, did not appeal the termination of the contract or the assessment of excess costs.

Plaintiffs' case rests on the assertion that they acquired "good and valid" liens on the vessels and the materials furnished for their construction under section 13, chapter 178 of the Revised Statutes of Maine, 1954.[4] It was these liens which were allegedly taken by the Government when it obtained title to the partially completed vessels and manufacturing materials, and which were subsequently removed from Maine for completion elsewhere. The immediate question before us is thus whether plaintiffs had the "property rights" which they claim. If not, the Government has taken nothing.

It is Federal law, and not the law of a particular state, which governs the construction of contracts to which the United States is a party. United States v. Allegheny County, 1944, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209. This principle is founded upon the supremacy clause of the Constitution of the United States,[5] which was designed to prevent the disparities, confusions, and conflicts that would ensue were the Federal authority subjected to state controls.

The Supreme Court on several occasions has stated in general terms that laborers and materialmen can acquire no lien on a Government work. United States v. Munsey Trust Co., 1947, 332 U.S. 234, 241, 67 S.Ct. 1599, 91 L.Ed. 2022; Equitable Surety Co. v. U. S., to Use of W. McMillan & Son, 1914, 234 U.S. 448, 455, 34 S.Ct. 803, 58 L.Ed. 1394; U. S., for Use of Hill v. American Surety Company of New York, 1906, 200 U.S. 197, 203, 26 S.Ct. 168, 50 L.Ed. 437. While the Supreme Court has not been called upon to determine the question of whether subcontractors may obtain recovery against the United States under

ment and for the protection and preservation of property. Failure to agree shall be a dispute concerning a question of fact within the meaning of the clause of this contract entitled 'Disputes'."

3. When the contract was terminated, one vessel had been completed and delivered to the Government, and the remaining ten vessels were in various stages of completion.

4. Section 13, chapter 178, Revised Statutes of Maine, 1954, provides as follows:
   "Whoever furnishes labor or materials for building a vessel has a lien on it therefor, which may be enforced by attachment thereof within 4 days after it is launched; but if the labor and materials have been so furnished by virtue of a contract not fully completed at the time of launching of the vessel, the lien may be enforced within 4 days after such contract has been completed. He also has a lien on the materials furnished before they become part of the vessel, which may be enforced by attachment; and the owners of any dry dock or marine railway used for any vessel have a lien on said vessel for the use of said dock or railway, to be enforced by attachment within 4 days after the last day in which the same is used or occupied by said vessel."

5. Article VI, Clause 2.

the Fifth Amendment "taking" theory, the comprehensive language employed in Munsey Trust Company at page 241, 67 S.Ct. at page 1602, "nothing is more clear than that laborers and materialmen do not have enforceable rights against the United States for their compensation", would seem to preclude that basis for recovery.[6]

· [3]   Plaintiffs contend that the above cited cases did not place in issue the subject matter of the contracts. Thus, whether they involved "public works" was not considered by the court. It is argued that a public work, such as to deny liens to laborers and materialmen, is one where title to the work rests initially with the Government, or is acquired by it as the work progresses. Plaintiffs refer us to United States v. Ansonia Brass and Copper Co., 1910, 218 U.S. 452, 31 S.Ct. 49, 54 L.Ed. 1107, in support of this assertion. In that case the Supreme Court had under review contracts for the construction of three vessels for the Federal Government. Creditors of the contractor there asserted liens under the supply-lien law of Virginia. A receiver was appointed by the state court and he took possession of the prop-

erty of the contractor, including the three vessels. In its decision, the Court affirmed the Supreme Court of Appeals of Virginia's opinion that the state liens were superior to any claim or lien of the Government as to two of the vessels, but reversed that court's identical ruling as to the third vessel, holding that title to it passed to the United States under the terms of the contract providing for its construction. Plaintiffs read that case as disallowing state lien claims upon property forming the basis of a Government construction contract *only* where the contract provides that title to the work is to pass to the Government as progress payments are made. They argue that where defendant under the contract merely reserves title to the construction materials, subject to transfer to the Government upon the contractor's default, as clause 11(d) did here, subcontractors' statutory liens will attach to the materials before the Government exercises its right to acquire title. We cannot agree, however, that the Ansonia decision is to be so narrowly interpreted.[7]

In the recent case of Thomson Machine Works Co. v. Lake Tahoe Marine Supply Co., D.C.1955, 135 F.Supp. 913, it was

**6.** Statutes providing for payment bonds on Government contracts were no doubt enacted to furnish a bond obligation in place of that security which might otherwise be obtained by attaching a lien to the property. See Equitable Surety Company v. McMillan, supra, at page 455, 34 S.Ct. at page 805; also Hill v. American Surety Co. of New York, supra.

The Act of August 24, 1935, 49 Stat. 793, 40 U.S.C.A. § 270a, commonly known as the "Miller Act," generally provides for a payment bond on a contract "for the construction, alteration, or repairs of any public building or public work of the United States." Acting under the authority of section 270e of that Act, the Secretary of Navy waived the bond requirement as to the instant contract. That section of the law allows waiver of the bond obligation "with respect to contracts for the manufacturing, producing, furnishing, construction, alteration, repair, processing, or assembling of vessels, aircraft, munitions, materiel, or supplies of any kind or nature for the Army or Navy, regardless of the terms of

such contracts as to payment or title
\* \* \*."

**7.** Apparent Congressional concern over the holding in the Ansonia decision was deflected in the enactment in 1911 of legislation giving the Government a paramount lien as to progress payments made in the construction of naval vessels. The statute, 34 U.S.C.A. § 582, in pertinent part reads as follows:

"Partial payments during work. The Secretary of the Navy is authorized \* \* to make partial payments from time to time during the progress of the work under all contracts made under the Navy Department for public purposes, but not in excess of the value of work already done; and the contracts made shall provide for a lien in favor of the Government, which lien is made paramount to all other liens, upon the articles or things contracted for on account of all payments so made \* \* \*."

Substituted section 31 of the additional general provisions of the instant contract specifies this paramount lien in subsection (b).

held that an action would not lie to quiet title and foreclose an alleged mechanics lien, provided under California law, upon certain propeller shafts supplied the prime contractor for the construction of utility boats under Government contract. There, upon the contractor's default, the Government acquired title to the shafts under a contract provision identical with the one we are here considering. The court made the following statements in reference to the import of the Ansonia decision [at page 915 of 135 F.Supp.]:

> "In the factual situation applicable to the Mohawk and the Galveston [two of the three vessels involved in the Ansonia case] the court held that the state lien law was applicable. The reasons for this holding, in this court's opinion, were twofold. *First, no provision was contained in the contracts for these vessels as to passing of title.* Secondly, the Supreme Court analyzed the entire contracts, and stated, 'We think that this contract, as the one for the Mohawk, was made in recognition of the rights of those who should furnish work or material for the vessel to secure their claims by liens which it was made the duty of the contractor to provide for in order to protect the title of the United States.'" [Emphasis added.]

We think the district court's interpretation of Ansonia is sound. The Supreme Court in that case was faced with the problem of discovering the intent of the contracting parties. Looking to the agreement before us, it is obvious that defendant contracted for the completion of the vessels with a view to their later use in a legitimate governmental function. For this reason the contract included a clause for the vesting of title in the Government. Prior to completion of the vessels defendant acquired title to them and the materials to be used in their construction. This was done according to the provisions of the contract. As we interpret it, the contract provided the Government with inchoate title to the various materials supplied the contractor by petitioners. In this sense the contract embraced a "public work" which was beyond the reach of subcontractors' liens. United States v. Munsey Trust Co., supra; Equitable Surety Co. v. McMillan, supra; Hill v. American Surety Company of New York, supra. Absent the "property rights" which the petitioners here claim, there was no basis for the Government's alleged taking.

Defendant's motion for summary judgment is granted, and plaintiffs' motion is denied. The plaintiffs' petition will be dismissed.

It is so ordered.

LARAMORE, MADDEN, and WHITAKER, Judges, concur.