FIRST NATIONAL INSURANCE
COMPANY OF AMERICA,
Plaintiff-Appellant,

v.

James T. LYNN, Secretary of the
Department of Housing and Urban
Development, et al., Defendants-Appellees,

Alvan R. Corkin, Defendant-Appellant.

Nos. 75–1136–75–1138.

United States Court of Appeals,
First Circuit.

Argued Sept. 9, 1975.

Decided Nov. 4, 1975.

Joel A. Kozol, Boston, Mass., with whom William I. Cowin, Robert D. Kozol and Friedman & Atherton, Boston, Mass., were on brief, for Alvan R. Corkin, appellant.

Paul R. Devin, Boston, Mass., with whom Robert D. Power, Peter G. Hermes and Peabody & Arnold, Boston, Mass., were on brief, for First National Ins. Co. of America, appellant.

Peter J. Gagne, Boston, Mass., with whom Sally A. Corwin, Joseph M. Corwin and Corwin & Corwin, Boston, Mass., were on brief, for Maganaro Drywall, Inc., John Davis Painting Company, Inc. and Firedoor Corporation of America, appellees.

Alan L. Lewis, Boston, Mass., with whom Francis X. Carroll, Boston, Mass., and John W. Flynn, Cambridge, Mass., were on brief, for Prima Constr. Corp. and San-Vel Concrete Corp., appellees.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and THOMSEN,[*] Senior District Judge.

THOMSEN, Senior District Judge:

First National Insurance Company of America (surety) brought this action in the district court seeking a declaratory judgment with respect to (1) its rights and obligations under two performance bonds and two payment bonds it had executed as surety for D.C.A. Builders, Inc. (the contractor) which had contracted to build two low-income housing projects (Boston Infill Housing I and II) for the Urban Housing Associates A and B, the respective owners;[1] and (2) its rights over against Alvan R. Corkin and two other individuals under indemnity agreements executed by them.

Corkin joined as codefendants over 40 subcontractors who had furnished labor and material on one or both of the projects. The indemnitors argued in the district court that the surety is not liable to the subcontractors under the payment bonds (A) because the caption at the top of the payment bonds conditions the right of subcontractors to recover on those bonds upon the full performance of the contract by the owners and contractors, and (B) because of changes in the construction contracts agreed to by the builders and the owners but not assented to by the surety.

The district judge granted summary judgment for the subcontractors on those issues and entered a final judgment in their favor under Rule 54(b), F.R.Civ.P., declaring that the surety is liable on the payment bonds, subject to the conditions stated in the body of the bonds. The indemnitors and the surety have appealed from that judgment, and urge the same points they raised below.

▮ (A) Each payment bond is on FHA Form No. 2452A, and is titled "Payment Bond", followed by the statement in parenthesis: "This bond is issued simultaneously with performance bond in favor of the owner conditioned on the full and faithful performance of the contract." The district judge correctly ruled that "the caption heading the payment bond does not condition recovery by the subcontractors on full performance of the contract by the owner or contractor". The caption simply notes that a performance bond has been is-

---

[*] Of the District of Maryland, sitting by designation.

1. The construction mortgages were insured by the United States Department of Housing and Urban Development pursuant to § 221(d)(3) of the National Housing Act, 12 U.S.C. § 1715*l* (d)(3).

sued, and describes the function of the performance bond. Even before it became customary to issue separate payment and performance bonds, the Supreme Court, in *Equitable Surety Co. v. McMillan,* 234 U.S. 448, 454, 34 S.Ct. 803, 805, 58 L.Ed. 1394 (1914), recognized that the obligation of the surety had "a dual aspect, it being given, in the first place, to secure to the Government [the owner] the faithful performance of all obligations which a contractor may assume towards it; and, in the second place, to protect third persons from whom the contractor may obtain materials or labor; and that these two agreements are as distinct as if contained in separate instruments." Further, at p. 456, 34 S.Ct. at p. 805, the Court said: "The nominal obligee is, with respect to these third parties, a mere trustee, and the obligors, including the surety as well as the principal contractor, enter into the obligation in full view of this." The construction urged by appellants in the instant case flies in the face of the purpose of the payment bond.

■ (B) Nor is there any merit in appellants' contention that changes in the contract agreed to by the owners and the contractor released the surety from its obligation under the payment bond. The general conditions of the construction contract, incorporated by reference in the payment and performance bonds, expressly authorized the owner to make and the contractor to perform "changes in the work within the general scope of the contract". Appellants did not assert in the district court or before us any changes beyond the general scope of the contract. The only change cited was a change in the original plans from precast concrete to masonry, which was

made before the contracts and the bonds were executed and was intended to reduce the cost of the work. Such a change does not discharge a surety's obligations to subcontractors for labor and material used or reasonably required for use in the performance of the contract. As the Court noted in *Equitable, supra,* the surety is charged with notice that it is entering into an obligation that will be relied upon by persons who cannot control the conduct of the nominal obligee, i. e., the owner, which cannot barter away, for its own benefit or convenience, the rights of the beneficiaries under the bond. 234 U.S. at 457–58, 34 S.Ct. 803.[2]

■ The three individual indemnitors were officers or directors of D.C.A. Development Corporation of which D.C.A. Builders, the principal on the bonds, was a wholly owned subsidiary. D.C.A. Development Corporation was also the general partner of the limited partnerships, Urban Housing Associates A and B, which were the owners of the properties involved and the obligees on the bond. Their appeals from the partial summary judgment were frivolous. The surety also appealed, and half-heartedly joined in their arguments. The appellees have been delayed for an unreasonable time in the prosecution of their claims, and should be awarded double costs in this court and damages to the extent of the reasonable fees of the attorneys who represented them on appeal. Rule 38, F.R.A.P. *See NLRB v. Bedford Discounters, Inc.,* 484 F.2d 923 (1 Cir. 1973); *Eaton v. New Hanover County Board of Education,* 459 F.2d 684 (4 Cir. 1972); Advisory Committee's Note, 43 F.R.D. 61, 155. Those damages should be determined by this court.

*Affirmed.*

---

**2.** The cases relied on by appellants do not support their contention. In *U.S.F. & G. Co. v. United States,* 54 U.S.App.D.C. 342, 298 F. 365 (1924), the changes in the contract consisted of "new undertakings, outside of the original engagement of the contracting parties". 298 F. at 368. In *Maryland Casualty Company v. City of South Norfolk,* 54 F.2d 1032 (4 Cir.),

*modified on other grounds,* 56 F.2d 822, *cert. denied,* 286 U.S. 562, 52 S.Ct. 644, 76 L.Ed. 1295 (1932), the change amounted to "an independent project covered by an agreement made after the time fixed by the original contract for the performance of the work had expired." 54 F.2d at 1037.