# McIVER CONSTRUCTION COMPANY ET AL.

## vs.

## AARON HURWITZ.

*Action on Bond—Estoppel to Assert Defenses—Contract Referred to in Bond—Making of Improvements—Loss to Mortgagee—Evidence.*

In an action on a bond given to secure a mortgagee against loss by reason of failure to make certain improvements on the property, it is no defense that the contract for the improvements, which was by reference made a part of the bond, was never executed, owing to a disagreement between the owner and the contractor, the obligee being ignorant, when he made the loan, of the non-execution of the contract, and the obligors on a bond being estopped to deny a recital therein as against an innocent party.                                        pp. 455-462

In an action on a bond, given to the owner of property and a mortgagee thereof by a contractor for improvements thereon, to indemnify them against loss by reason of failure to perform the contract, the fact that the contract, which was by reference made a part of the bond, provided for the giving by the owner to the contractor of satisfactory security to insure payment for the improvements, and that by reason of disagreement between the owner and the contractor such security was not given, was no defense as against the mortgagee, the broker who handled the transaction having been informed, by both the owner and contractor, that they had agreed on every thing, including the security to be given by the owner, and the broker having, on the strength of this information, secured from the mortgagee a check for the amount of the loan.                    pp. 461, 462

Nor was it a defense that no permit was granted by the owner to the contractor to make the improvements, and that possession of the property for such purpose was not given him, the contractor having declined to do the work.        pp. 460, 461

In an action on a bond given plaintiff, a second mortgagee, to secure the completion of improvements on the mortgaged property, foreclosure proceedings under the first mortgage were admissible for the purpose of proving, in connection with other evidence, that plaintiff had sustained a loss by reason of the failure to make the improvements, the obligors being liable for any loss occasioned by such failure, and not merely for the difference between the contract price of the work and the actual cost to the owner of completing the work.                    p. 463

The admission of evidence subject to exception is within the discretion of the trial court.                                       p. 464

A motion to strike out all the evidence admitted subject to exception must be overruled if any part of such evidence is admissible.                                                      p. 464

*Decided January 17th, 1924.*

Appeal from the Superior Court of Baltimore City (GORTER, C. J.).

Action by Aaron Hurwitz against the McIver Construction Company and the Maryland Casualty Company. From a judgment for plaintiff, defendants appeal. Affirmed.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Walter L. Clark*, with whom were *William Penn Lewis, Jr.*, and *Bowie & Clark* on the brief, for the appellants.

*Richard S. Culbreth*, with whom were *Brodie & Sachs* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the Court.

This suit was brought by Aaron Hurwitz, the appellee, against the McIver Construction Company, a corporation (hereinafter referred to as the contractor) and the Maryland

Casualty Company, a corporation (hereinafter referred to as the surety), the appellants.

The declaration charges that on or before "the 30th of September, 1919, the plaintiff agreed to loan to The Clifford Improvement Company, a corporation, the sum of" $2,400 "for six months at six per cent. on a second mortgage of certain property" in Baltimore City, "known as No. 2514 North Charles Street, which was at that time subject to a first mortgage to The Druid Hill Perpetual Building Association of Baltimore City, a corporation, for five thousand and seventy dollars, on condition that the Clifford Improvement Company would repair and improve said property to the extent of seven thousand nine hundred and seven dollars and twenty-two cents and would give the plaintiff satisfactory security that such repairs and improvements would be made; that thereupon, as such security, The Clifford Improvement Company offered and the plaintiff accepted the bond of the defendants, dated the 30th day of September, 1919." The bond is set out in the declaration, but the only parts to which we need refer are as follows:

"Know all men by these presents, That we, McIver Construction Company, of Baltimore, Maryland (hereinafter called the Principal), as Principal and the Maryland Casualty Company, a corporation organized under the laws of Maryland and having its principal place of business in the City of Baltimore, Maryland, (hereinafter called the surety), as Surety, are held and firmly bound unto The Clifford Improvement Company and Aaron Hurwitz, as their respective interest may appear, of Baltimore, Maryland, (hereinafter called the Obligee), in the sum of seven thousand nine hundred seven and 22/100 dollars ($7,907.22) for the payment whereof said Principal and Surety bind themselves, their legal representatives, successors and assigns, jointly and severally, firmly by these presents.

"Whereas, the Principal has entered into a written contract, dated * * *, 191    , with the Obligee, for

additions and alterations to a three-story brick building located at 2514 North Charles Street, Baltimore, Maryland, in accordance with the plans and specifications prepared by Benjamin Frank, architect, a copy of which is hereto annexed, and which contract is made a part hereof, as fully as if recited at length herein:

"Now, therefore, the conditions of this obligation is such, that if the Principal shall indemnify the Obligee against any loss or damage directly arising by reason of the failure of the Principal to faithfully perform said contract then this obligation shall be void; otherwise to remain in full force and effect;

"Provided, however, that this bond is executed upon the following express conditions, the performance of each of which shall be a condition precedent to any right of recovery hereon; anything in the contract to the contrary notwithstanding:

"First—That in the event of any default on the part of the principal, a written statement of the particular facts showing such default and the date thereof shall be delivered to the Surety by registered mail, at its office in the City of Baltimore, Maryland, promptly and in any event within ten (10) days after the Obligee or his representative, or the architect, if any, shall learn of such default; that the Surety shall have the right within thirty (30) days after the receipt of such statement to proceed, or procure others to proceed, with the performance of such contract; shall also be subrogated to all of the rights of the Principal; and any and all moneys or property that may at the time of such default be due, or that thereafter may become due, to the Principal under said contract shall be credited upon any claim which the Obligee may then or thereafter have against the Surety.

"Fourth—That the Obligee shall faithfully perform all the terms, covenants and conditions of such contract on the part of the Obligee to be performed."

The declaration further charges that said bond was delivered to the plaintiff, who, accordingly, made said loan to the Clifford Improvement Company (hereinafter referred to as the owner) upon the terms mentioned, that the plaintiff faithfully performed all the terms, covenants and conditions of said bond on his part to be performed, but that the defendants failed to perform all the terms, covenants and conditions of said bond on their part to be performed in that the contractor failed to make any additions or alterations to said property, and the surety has failed and refused to indemnify the plaintiff against the loss or damage directly arising by reason of the failure of the contractor to make such additions and alterations; that the said loss or damage to the plaintiff is the sum of $1,028.60, and was "ascertained and made certain" in the case of said *Building Association* v. *Clifford Improvement Company and C. Stanley Sterling* in Circuit Court No. 2, in which said first mortgage was foreclosed by the sale of said property, and out of the proceeds of sale the plaintiff was allowed in the auditor's account, which was finally ratified on the 25th of September, 1920, the sum of $1,441.00, and that the plaintiff demanded of the defendants said sum of $1,028.60, but they refused to pay the same.

Each of the defendants filed the pleas of "never was indebted" and "did not promise" as alleged, and the trial of the case before the court without a jury resulted in a judgment in favor of the plaintiff for $1,188.66, from which the defendants have brought this appeal.

The plaintiff testified that he was engaged in the wholesale drygoods business; that about a week or so before the 30th of September, 1919, or sometime in September, he was approached by Mr. Morris Schuman, a real estate agent or broker, in regard to a loan of $2,400 on the property known as No. 2514 North Charles Street, which he said was to be remodeled at a cost of seven or eight thousand dollars; that Mr. Schuman brought him the specifications for the proposed improvements and stated that there was to be a first mortgage

on the property of "five thousand and some dollars" and that the owner would need and wanted to borrow $2,400 on a second mortgage; that he, the plaintiff, sent "a real estate man" to look at the property and to give him an estimate of its value, and that after getting a report from him he told Mr. Schuman that he did not think the property, as it then stood, sufficient security for the second mortgage, but that if he could be assured that the proposed improvements would be made he would be willing to make the loan; that Mr. Schuman said that the "construction company" was to do the work and was to give a bond to the owner for the completion of the work; that he told Mr. Schuman that that would not be satisfactory because he did not know what might happen between "these parties," and that he would require a bond to himself from some bonding company so that he could be certain that the improvements would be made, and that Mr. Schuman said he would see if that could be done; that the next time he saw Mr. Schuman was when he brought him the bond and a copy of the contract referred to therein and told him that everything had been "executed;" that he then gave Mr. Schuman his check payable to the Clifford Improvement Company for $2,400, so that he could put the matter through without the witness being present, and that shortly after that Mr. Schuman brought him the mortgage, or the receipt for the mortgage; that about three weeks after he gave the check Mr. Lewis of the surety company called him up and told him that the contract referred to in the bond had not been signed by the parties, and that therefore the bond was of "no effect;" that he told Mr. Lewis that he had given his check "on the strength of the bond," and that if he had called him up before he gave the check he would not have given it; that he did not know that the contract had not been signed, and did not see how his rights under the bond could be affected; that he received on his mortgage $1,436 of the $1,441 allowed by the auditor's account in the proceedings for the foreclosure of the first mortgage on the property, and then notified the surety

company that his loss by reason of the failure of the contractor to make the improvements on said property and perform its contract was $1,028.28, and demanded payment of that amount.    On cross-examination he testified that when Mr. Schuman brought him the bond and contract he told the plaintiff that it was only a copy of the contract; that he did not read the contract, but did read the bond, and took it for granted that the bond would not have been issued unless the contract had been signed; that it was the first bond of the kind that he had ever read, and that he was not a lawyer; that he did read the specifications that Mr. Schuman brought him when he first came to see him about the loan, but that he did not read the contract which was given to him at the time he received the bond.

Mr. Schuman testified that he was a real estate agent or broker, and was employed by the Clifford Improvement Company to secure the loan of $2,400, and that he submitted the proposition to the plaintiff as a broker for the Clifford Improvement Company; that after the plaintiff had the property examined he told the witness what he would do, and that witness reported to Mr. Sterling, president of the owner, what the plaintiff was willing to do and that he wanted a bond; that he understood that the contractor was to give a bond for the completion of the improvements on the property, with the Maryland Casualty Company as surety, and told the plaintiff so; that he went to see the surety and saw Mr. Lewis, the assistant manager of the bonding claim division of that company, and explained to him that the plaintiff was to lend the money on a second mortgage, and that he would not make the loan unless the bond "ran to him," and that Mr. Lewis put the plaintiff's name in the bond; that the transaction was to be put through at Mr. Parkhurst's office, and as Mr. Sterling, president of the owner, and Mr. McIver, president of the contractor, were not there, he went to look for them and met them as they were coming out of the Fidelity Building; that Mr. McIver told

him that he was going away and when the witness asked him
if the papers had been signed, they presented to him the
contract signed by the contractor, and Mr. McIver told him
"that everything had been arranged between them, that the
papers were up stairs and he was in a hurry, * * * that
everything had been agreed upon; the papers were all pre-
pared and that I could go ahead and put the transaction
through."    On cross-examination he testified that he knew
"there was certain security to be given by the Clifford Im-
provement Company" before the contractor "was to go ahead
under the contract," and understood that that was to be a
third mortgage on the property; that Mr. McIver and Mr.
Sterling told him that the matter had been arranged, and
that he, the witness, knew "that they had agreed on the form
of the security."    Mr. Lyon testified that he went with Mr.
Schuman to the office of the surety and heard him explain to
Mr. Lewis that the plaintiff would not loan the money unless
he got a bond that the improvements would be made, and
that it would be necessary that the bond "be written" in
plaintiff's "name directly," and that Mr. Lewis said he would
attend to it.    Mr. Sterling testified that Mr. McIver gave
him the bond and that he delivered it to Mr. Schuman with a
copy of the contract attached to it; that the contract was
signed by the contractor, and that Mr. McIver had agreed
to take a third mortgage of the property to cover the costs.
of the proposed improvements thereon; that on the day Mr.
Schuman came to see Mr. McIver and himself, Mr. McIver
was going to the Eastern Shore, and gave the witness the
contract, which had been signed by the contractor, and told
him to come back in a few days and sign the mortgage, and
that when he went to see Mr. McIver again Mr. McIver
wanted a deed instead of a mortgage, and that witness would
not give a deed, and did not, therefore, sign the contract.
Mr. McIver, a witness for the defendants, testified that arti-
cle 8 of the contract referred to in the bond required the
owner to furnish the contractor with satisfactory security,

and that the property was to be the contractor's security; that
the contract was executed by the contractor and given to Mr.
Sterling to be executed by the owner; that when the question
of a mortgage to the contractor came up witness wanted an
absolute deed of the property instead of a mortgage, and that
Mr. Sterling refused to give a deed and the contract was
never signed by the owner; that the permit to make the
improvements was never obtained, that Mr. Sterling never
"notified him that he could have possession of the building
for the purpose of making the repairs," but told him "the
thing was off." On cross-examination he testified that he
saw Mr. Schuman, as Mr. Schuman stated in his testi-
mony; that he knew that the transaction was to go through
in the afternoon of that day; that he was familiar with the
arrangement made with the plaintiff; that he told Mr. Schu-
man that the contract had been signed and that he and Mr.
Sterling had agreed on the security to be given by the owner
to the contractor, and "had agreed on everything."

The bond, a copy of the contract and a copy of the mort-
gage to the plaintiff were also offered in evidence, and at the
conclusion of the testimony each of the defendants offered
three prayers, by the first and third of which they challenged
the plaintiff's right to a verdict on the grounds, (1) that
there was no evidence in the case legally sufficient to entitle
him to recover, and, (2) that under the pleadings *the plain-
tiff* had offered no evidence legallly sufficient to entitle him
to recover. By their second prayer they asked the court to
say that under the pleadings the *plaintiff* had offered no
evidence legally sufficient to prove any damage suffered by
him, and that he was, therefore, only entitled to nominal
damages.

The rejection of these prayers is the subject of the defend-
ants' fourth exception, and in support of their first and third
prayers they rely on the terms of the bond by which the
principal and surety agreed to "indemnify the obligee against
any loss or damage directly arising by reason of the failure of

the principal to faithfully perform said contract," and the conditions of the bond which provide, "that the obligee shall faithfully perform all the terms, covenants and conditions of such contract on the part of the obligee to be performed," and that "any and all moneys or property that may at the time of such default be due, or that thereafter may become due to the principal under said contract shall be credited upon any claim which the obligee may then or thereafter have against the surety," and on the following provisions of the contract: "The owner agrees to furnish the contractor satisfactory security before starting the contract, that the contractor may be assured that he will receive the payments from the owner as hereinafter stated in article 9." "The contractor shall complete the several portions and the whole of the work comprehended in this agreement and at the time or times herein stated, to wit: 60 days after the permit is granted and possession of the present building is given to the contractor." The contentions of the appellant are (1) that the contract was "never in force" because it was never signed by the owner, who refused to agree to the contractor's terms; (2) that the contract "never became operative" because the owner never complied with article 8 of the contract, in which he agreed to furnish the contractor satisfactory security; (3) the contract "was never breached by the contractor" because the permit was never granted and he was never given possession of the property; (4) that there was no liability on the bond because it was given to indemnify the obligee against loss arising by reason of the failure of the principal to perform the contract, and did not obligate the obligors to pay the mortgage debt, and, (5) that "regardless of the contractor's liability upon the contract," the bond by its terms exonerates the surety by the provision quoted in regard to the application of moneys due at the time of a default, or that became due thereafter, their argument being that as no part of the contract price of the work has been paid, it is more than sufficient to cancel the claim of the

plaintiff against the surety. The answer to these conten-
tions is that the bond was not only given to secure the owner,
but also to indemnify the plaintiff against any loss that he
might suffer by reason of the failure of the contractor to
perform the contract, which was referred to in and made a
part of the bond. The *character* of the security to be given
by the owner to the contractor under article 8 was not made
a subject of the contract, but was left to the subsequent and
independent agreement of the contractor and the owner. The
permit for the improvements was not granted and the
possession of the property was not given because the con-
tractor declined to do the work. The surety notified the
plaintiff after he had made the loan that the contract had not
been executed and the surety was not liable on the bond, and
the surety knew that the contractor had abandoned the work
and that there was, therefore, no money due the contractor
under the contract, and there was evidence in the case from
which the court, sitting as a jury, could have found that all
the parties to the bond knew of the circumstances under
which the plaintiff was to make the loan; that on the day
the transaction of the loan by the plaintiff was to be put
through, the president of the contractor and the president
of the owner, knowing that the loan was to be put through
that afternoon, delivered to Mr. Schuman the bond, with a
copy of the contract attached, and told him that they had
agreed upon everything, including the security to be given to
the contractor, and that he "should go ahead and put the
transaction through"; that Mr. Schuman then delivered the
bond, with the copy of the contract attached, to the plain-
tiff and told him that everything "is executed," and obtained
from him the check for $2,400, and that the plaintiff never
knew that the contract had not been signed until he was
notified by the surety about three weeks after the loan had
been made. With this evidence in the case the court below
properly refused to grant the defendants' first and third
prayers. It is said in 10 *R. C. L.* sec. 120, p. 812, "The

obligors on a bond, that is, the principal and his sureties, are estopped from denying the recitals contained therein," and that "where sureties have placed in the hands of their principal an instrument which purports to be valid and complete, they are estopped to assert, as against an innocent holder for value, that they did not execute the instrument and that it was not to be delivered unless additional parties also became sureties thereon," and the rule was applied by this Court in the cases of *Billingsley* v. *State,* 14 Md. 369, and *Frownfelter* v. *State, Use of Carroll County,* 66 Md. 80, where the recital in a tax collector's bond was held to estop the parties from denying that the principal was collector, or that he was answerable as collector. The doctrine of estoppel also furnishes a complete answer to the contention that the contract "never became operative" because the owner refused to give the contractor satisfactory security. As we have said, the bond was given to indemnify the plaintiff as well as the owner against loss by reason of the failure of the contractor to perform the contract. The contract did not specify the character of the security to be given, but left it to be determined by the agreement of the owner and the contractor, and the loan was not made until after Mr. Schuman was assured by the contractor and the owner that they had agreed upon the security to be given, and he was told by them to go ahead and put the transaction through. To permit the defendants under such circumstances to escape liability on the bond because the contractor and owner ultimately failed to agree upon the security to be given would operate as a fraud on the plaintiff. The suggestion of the appellants that Mr. Schuman was the agent of the plaintiff and that he knew that the contract had not been signed by the owner, is not justified by the evidence, which is to the effect that Mr. Schuman secured the loan and the check from the plaintiff as the agent or broker of the owner, and the only part of the transaction referred to in which he could be said to have acted as the agent of the plaintiff was the execution and delivery of the mortgage.

The defendants objected to the introduction in the evidence of the foreclosure proceedings under the first mortgage for the purpose of proving, in connection with other evidence, that the plaintiff had sustained a loss by reason of the failure of the contractor to do the work mentioned in the contract, and the admission of such evidence subject to exception is the subject of their second exception. This evidence is also a part of the evidence referred to in their motion, at the conclusion of the testimony, to strike out all the evidence admitted subject to exception, and their third exception is to the refusal of the court to grant the motion. In support of these exceptions and their second prayers the appellants insist that the bond did not obligate the principal and surety to pay the mortgage debt, and that the only measure of damages in such cases is the difference between the contract price of the work contracted for and the actual cost to the owner of completing the work. The questions raised by these exceptions are disposed of adversely to the contention of the appellants by the case of the *American Bonding Co. v. Loan Ass'n.,* 101 Md. 323. There a mortgage of $3,500 was assigned on condition that the assignor would give to the assignee a bond to insure the completion of the houses being erected on the lots covered by the mortgage within a certain time, and the condition of the bond was that "if the said William A. Wade, assignor of said mortgage, shall fully complete and finish the building and improvements now in course of erection on said respective lots of ground, fence in said lots, lay the pavements and put the ground and premises in complete order for occupancy by tenants on or before the first day of July next." Ten of the houses were not completed, the mortgage was foreclosed and the assignee of the mortgagee, having realized only $1,100 from the sale, brought suit on the bond. On appeal by the surety from a judgment in favor of the plaintiff, this Court held that, while the bond was not a guaranty of the mortgage debt, the obligors were liable for any loss suffered by the plaintiff by reason of the non-comple-

tion of the houses, and the present Chief Judge referred to the evidence of the amount realized from the foreclosure of the mortgage (which was shown by the introduction in evidence of the auditor's account in the foreclosure case) and the evidence that "by reason of the incomplete condition of the houses on July 1st, 1899, they could not be sold for anything like they would have been worth if completed," as showing that the plaintiff had sustained a loss within the terms of the bond for which it was entitled to recover. In the present case it was practically admitted that, if the improvements referred to in the bond and contract had been made, the property would have been ample security for the plaintiff's mortgage.

In regard to the first exception it is only necessary to say that the admission of evidence subject to exception is within the discretion of the trial court, and in reference to the third exception we may add to what we have already said, that nearly all of the evidence in the case was admitted subject to exception, and that where the motion is to strike out all the evidence admitted subject to exception the motion must be overruled if any part of such evidence was admissible. *Jessup* v. *State*, 117 Md. 119.

Finding no error in the rulings of the court below, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*