## BOPST v. COLUMBIA CASUALTY CO.
### Civil No. 756.

District Court, D. Maryland.
Dec. 27, 1940.

Nathan Patz, of Baltimore, Md., for plaintiff.

Emory, Beeuwkes, Skeen & Oppenheimer, of Baltimore, Md., for defendant.

CHESNUT, District Judge.

At the trial of this case the defendant moved for a directed verdict which was rejected with the reservation of the question in accordance with Rule 50 of the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. These motions have been argued by counsel and I have given further consideration to the subject.

The nature of the suit, and a summary of the evidence at the trial, appears in the charge to the jury which has been transcribed .by the stenographer.

The jury found a verdict for the plaintiff in the amount of $3,243.17, and filed with their verdict a written memorandum in which they stated that the amount of the verdict was computed as follows:

```
"40 days at $100. per day damage  $4,000.00
   Casing work on boilers.......   2,133.40
   Cost of welding clips........     159.77
                                  ----------
                                  ·$6,293.17
(Sum retained by Bopst from
    bal. due Thurston on con-
    tract price) .............     3,050.00
                                  ----------
                                   $3,243.17"
```

The significance of this computation will appear upon reading the charge to the jury.

The defendant's motion for a directed verdict was based on the ground that the defendant's surety bond guaranteed the performance by Thurston & Sons, the plaintiff's subcontractor, of a specified contract between the plaintiff and Thurston, dated April 25, 1939; that with the knowledge of the plaintiff a copy of this contract, then unexecuted by the plaintiff and Thurston, was submitted to the defendant Surety Company as a basis for the issuance of its bond, on May 18, 1931, and the defendant's surety bond was then executed referring to the form of contract so submitted as the contract to be guaranteed; and that ·there-

after the plaintiff and Thurston instead of executing the contract which had been submitted to the Surety Company made a material change in the contract, with respect to the time of completion of performance by the sub-contractor, in consequence whereof the surety is not obligated on its bond. The difference between the contract as submitted to the Surety and as later actually executed was that in the former the time for completion was 80 days from the date of the contract; while in the contract as finally signed the time for completion was made 45 days after notice to sub-contractors to proceed. The contract contained a liquidated damage clause of $100 per day for the delay. As above stated the jury allowed forty days' delay with damages of $4,000. It is obvious, therefore, that the particular clause of the contract to which the change related was a very material one to the parties.

At the trial of the case I had very substantial doubt as to whether the effect of the change was not as a matter of law one that discharged the Surety; but time did not afford then to study the papers and consider the matter very fully. Since hearing argument on the present motions and further study of the papers in the case and the applicable law, I have reached the conclusion that the motion for a directed verdict should have been granted.

The sequence of events with respect to the execution of the surety bond and the contract are as follows: Under date of April 12, 1939, Thurston made written application to the Surety Company for the bond. In the application he stated that work must begin about May 15, 1939, but that there was no required time for it to be finished and no penalty for non-compliance on time. Thurston applied for the bond to the local Norfolk agent of the Columbia Casualty Company who corresponded with the home office in New York upon the subject. The New York office did not immediately act upon the application. On April 25, 1939, Bopst, the plaintiff, sent to Thurston the form of contract in duplicate and also the form of surety bond that he wanted. The contract contained the following clause as to time of completion: "All of which shall be done and completed within eighty (80) calendar days from date hereof as the sub-contractor doth hereby covenant to do". The contract was not executed by Bopst but was dated April 25, 1939. Thurston handed the papers to

Farant, the defendant's local agent at Norfolk, who transmitted them to New York.

On May 17, 1939, Thurston orally conferred with Farant regarding the bond; and thereafter on the same day Farant wrote to the defendant in New York saying:

"Your wire this even date told us that you would not authorize us to execute the form of bond which we attached to our letter of May 15th, in lieu of the standard Columbia contract bond form which we have already executed in this caption, until you had received from us a copy of the contract. We are therefore attaching hereto a copy of this contract and ask that you please wire us tomorrow, Thursday, May 18th."

It is important to note the postscript on this letter from Farant to the defendant, the full significance of which was possibly not sufficiently considered at the trial. This postscript was as follows:

"P. S. We want to call your attention to a couple of things. In the *application* you will see that there is no special time required to finish the job, and no penalty for failing to do so. This was changed after we executed the bond, we understand, and is now work to be completed eighty (80) days after notice to proceed to work, with $100. per day penalty for non-completion on time, although the *contract* says '80 days from date hereof'. Our Principal says that they can complete the job within 45 days after notice to proceed." (Italics supplied)

On May 18, 1939, the Surety Company authorized Farant to execute the bond and he did so and delivered it to Thurston. On May 19, Thurston wrote Bopst enclosing the bond and also the contract, dated April 25, 1939 (which had been sent to him by Bopst), then signed by Thurston but not by Bopst. Thurston called attention to the fact that before signing the contract he had changed the wording of the time of completion clause to read as follows:

"All of which shall be done and completed within sixty (60) days after our being notified that the boilers are in place and ready for bricking and refractory work."

And added:

"You will note that the contract as drawn states that we are to have completed our work within eighty (80) calendar days from the date of contract and as you know we will not be able to start work until on

or about the 15th of July and that would only give us 5 days to complete our job. Thanking you to insert this wording in the copy of contract you have and to mail us back the enclosed copy after signing, we are," etc.

On May 20, 1939, Bopst (apparently after some further conversation with Thurston in person or by telephone) returned the contract signed by him but only after changing the 60-day period in the contract as originally signed by Thurston, to 45 days. Bopst called attention to this and requested Thurston to initial the change which was finally done. Neither the home office of the Surety Company nor its local agent at Norfolk who executed the bond was advised of this change made in the contract by the parties; and did not learn of the change until months after the work had been finally completed, and when about March 1940, for the first time, claim was made on the bond by Bopst.

From this sequence of events it will be noted that although the contract called for completion within 80 days from its date, April 25, 1939, the local agent of the Company and also the home office of the Company, understood when the bond was executed under date of May 18th that the 80 days for completion would begin to run not from the formal date of the contract, April 25th, but "after notice to proceed to work". It is true that this understanding was based on negotiations between the local agent at Norfolk and Thurston and not shown to have been known to Bopst. But it is also uncontradicted that Bopst fully knew that the contract which he had submitted to Thurston to be the basis for a surety bond was changed in a material respect before it was executed by himself and Thurston. It may be that, when Thurston sent the bond dated May 18, 1939, to Bopst with the former's letter of May 19th, Bopst may have inferred that the Surety Company knew of the change from 80 days from April 25, 1939, to 60 days after notice to proceed, as the contract was so amended by Thurston before sending it to Bopst. But it is certainly true that Bopst knew that he was making the further change in the contract by reducing 60 days to 45 days, after the bond had been executed by the Surety Company, and without notice by him to the Surety Company. As to this Bopst said that he assumed that Thurston would notify the Surety Company of the change. But the uncontradicted

fact is that the Surety Company was not so notified.

■  Under these facts I reach the conclusion that the Surety Company is not bound on its bond by reason of the important and material variance between the contract which it insured and the contract as subsequently executed by the parties. The main contention of the plaintiff at the trial was that the change, although possibly in a material provision of the contract, was not prejudicial to the Surety Company; and the case was argued largely by counsel on analogy to an immaterial and not prejudicial change made by the parties to a contract after the execution thereof and during the performance thereof. There are authorities to the general effect that such an immaterial change during the performance not prejudicial to a compensated surety will not relieve the surety. Atlantic Trust & Deposit Co. v. Laurinburg, 4 Cir., 163 F. 690. But where the change is in a material matter, and not assented to by the surety, it will be discharged. Fidelity & Casualty Co. v. Metal Window Co., 4 Cir., 30 F.2d 56; Maryland Casualty Co. v. Norfolk, 4 Cir., 54 F.2d 1032; United States v. Freel, 186 U. S. 309, 22 S.Ct. 875, 46 L.Ed. 1177; Equitable Surety Co. v. United States to Use of W. McMillan & Son, 234 U.S. 448, 457, 34 S.Ct. 803, 58 L.Ed. 1394; Tide Water Oil Co. v. Globe Indemnity Co., 2 Cir., 238 F. 157; United States v. Poe, 138 Md. 466, 478, 114 A. 705. But I think these cases are not directly applicable to the present situation, where the contract as originally executed after the making of the bond varied in a material particular from the contract as insured in the bond, to the knowledge of the obligee and without the knowledge and assent of the surety. Williston, Contracts, Rev.Ed. Vol. 4, ss. 1239-1241. Even if we hold the Surety Company to the contract as originally written on April 25th, the eighty-day provision therein is not on a comparable basis with the 45-day provision in the contract as finally executed. And as the contract had this material variation, on a non-comparable basis, it cannot be properly said that the Surety Company ever agreed to insure the contract as changed by the parties without its knowledge. In other words, the contract insured was not the contract subsequently executed, but was materially variant therefrom. Nor do I find any proper basis for estoppel in this case in favor of Bopst against the Surety Company as the

change as finally made was with Bopst's knowledge and without the knowledge of the Surety Company, and Bopst simply relied upon Thurston to notify the Surety Company. It seems that Thurston was not the agent of the Surety Company for this purpose. Bopst could properly hold the Surety Company to the changed contract only on the basis of notice of change and acquiescence therein, which did not occur.

The bond was delivered by the Surety Company to Thurston, the other principal therein, in Norfolk, Virginia, and by Thurston sent by mail to the plaintiff obligee in Baltimore, Maryland. Whether it was a Virginia or Maryland contract has not been argued by counsel and is seemingly unimportant, as no judicial decisions have been called to my attention from either state bearing on the legal problem in the case, except McIver Co. v. Hurwitz, 144 Md. 451, 462, 125 A. 153, which recognizes and applies the general rule that a surety is estopped to deny a recital in its bond relied on by an *innocent holder for value, without knowledge of the falsity of the recital.* See also Equitable Surety Co. v. United States to Use of W. McMillan & Son, 234 U.S. 448, 457, 34 S.Ct. 803, 58 L. Ed. 1394.

I therefore feel obliged to grant the defendant's motion for judgment *non obstante veredicto.*

■ This will, of course, terminate the case unless there is an appeal. But in the event that there should be an appeal, it is desirable to also rule upon the motion for a new trial made by the defendant. The proper practice in this respect is outlined in a very recent opinion by Mr. Justice Roberts for the Supreme Court in the case of Montgomery Ward & Co. v. Luther M. Duncan, December 9, 1940, 61 S.Ct. 189, 195, 85 L.Ed. ——, where it was said:

"If alternative prayers or motions are presented, as here, we hold that the trial judge should rule on the motion for judgment. Whatever his ruling thereon he should also rule on the motion for a new trial, indicating the grounds of his decision. If he denies a judgment n. o. v. and also denies a new trial the judgment on the verdict stands, and the losing party may appeal from the judgment entered upon it, assigning as error both the refusal of judgment n. o. v. and errors of law in the trial, as heretofore. The appellate court may reverse the former action and itself enter judgment n. o. v. or it may reverse and remand for a new trial for errors of law. If the trial judge, as he did here, grants judgment n. o. v. and denies the motion for a new trial, the party who obtained the verdict may, as he did here, appeal from that judgment. Essentially, since his action is subject to review, the trial judge's order is an order *nisi.* The judgment on the verdict may still stand, because the appellate court may reverse the trial judge's action. This being so, we see no reason why the appellee may not, and should not, cross-assign error, in the appellant's appeal, to rulings of law at the trial, so that if the appellate court reverses the order for judgment n. o. v., it may pass on the errors of law which the appellee asserts nullify the judgment on the verdict.

"Should the trial judge enter judgment n. o. v. and, in the alternative, grant a new trial on any of the grounds assigned therefor, his disposition of the motion for a new trial would not ordinarily be reviewable, and only his action in entering judgment would be ground of appeal. If the judgment were reversed, the case, or remand, would be governed by the trial judge's award of a new trial."

■ In this case I find it proper to grant the motion for a new trial as well as the motion for judgment n. o. v., in accordance with the practice outlined in the Montgomery Ward Case. My principal reason for granting a new trial is that the verdict of the jury, I think, is definitely contrary to the very considerable weight of the evidence with respect to the alleged delay by Thurston in completing the work under the contract. The whole compensation to be paid to Thurston for the work was $17,000. At the time of the trial $3,050. was still unpaid by Bopst to Thurston. After crediting this latter item the jury found damages in favor of Bopst in the amount of $3,243.17, thus computing total damages against Thurston in the amount of $6,293.17, as compared with the total contract price of $17,000; certainly a very heavy penalty for alleged insufficiency of performance by Thurston. Disregarding the items of the jury's verdict, except the 40 days' delay, I am satisfied that the decided weight of the evidence was against a proper finding of delay to any such extent in performance by Thurston.

The motion for judgment n. o. v. is granted; and the motion for a new trial is also granted, pursuant to the practice

above referred to, in the event of an appeal by the plaintiff. In the instant case the Casualty Company was the only defendant. The plaintiff still has his remedy against Thurston in a proper forum.